PACIFIC RAILROAD CO. v. DANIEL W. THOMAS *et al.*

1. RATIFICATION OF CONTRACT; *Notice to Principal, of Agent's Contract.* A master mechanic of a railroad company for a particular division of the company's road employs a physician and surgeon to attend an employé of the company who was injured while in the performance of his duties as such employé, and while under the immediate order of said master mechanic, and said master mechanic states that he would see that the company paid for said physician's services. The physician performs said services, looking to the railroad company for his pay and giving to it the credit, (although at the same time he charges upon his books said services to said employé, and makes no charge upon his books against said railroad company.) While he was so performing his said services he makes out a bill for the same against the railroad company and incloses it in a letter which states his said employment by said master mechanic, and asks that the company pay the bill, and he sends said letter and bill to the assistant superintendent of the railroad company for said division, but neither said division superintendent nor the company ever pay any attention to said bill or to said letter. *Held,* That these facts are sufficient to uphold a finding by the jury that said division superintendent ratified said employment of said physician and surgeon by said master mechanic.

2. SUPERINTENDENTS *of Railway Corporations; Their Powers, and Authority.* It will be presumed in the absence of anything to the contrary, that the general superintendent of a railroad company has the authority from the company to employ a physician and surgeon to attend an employé of the company who has been injured while in the company's employ. And it will also be presumed in the absence of anything to the contrary, that the division superintendent of such company has the sole power within his division as the general superintendent has. And it will also be presumed in the absence of anything to the contrary, that where an officer or agent of a railroad company has the power in the first instance to employ a physician and surgeon and make the company responsible for his services, such officer or agent would also have the power to ratify a previous unauthorized employment of such physician and surgeon, and thereby make the company responsible for his services.

*Error from Leavenworth District Court.*

ACTION by *Thomas* and another, to recover for certain professional services as physicians and surgeons. All necessary facts are set forth in the subjoined opinion. Trial at May Term 1873 of the district court. Verdict and judgment

in favor of plaintiffs for $235, and the *Railroad Company* brings the case here.

*T. A. Hurd,* for plaintiff in error.

*Clough & Wheat,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action for services as physicians and surgeons. Daniel W. Thomas and Moses S. Thomas were the plaintiffs in the court below, and the Pacific Railroad was the defendant. The facts of the case stated briefly are substantially as follows: In November 1869, Frank Gates was assistant master mechanic of the western division of plaintiff-in-error's railroad, the terminus of which was in Leavenworth. Robert Kane was section boss, and had charge of the repairs of track and road-bed, and had in his employ one John Kennedy. On November 4th, Gates and Kane, with the men under Gates' charge, undertook to load the smoke-stack of a locomotive upon a tender at the turntable in Leavenworth, and from some defect of the appliances used the stack fell, and Kennedy was caught by it, and his leg was broken. Dr. D. W. Thomas attended Kennedy as a physician and surgeon until Kennedy recovered, which was about the last of December 1869. There was sufficient evidence for the jury to find, as we suppose they did find, that Dr. Thomas was employed by both Gates and Kane, and that Gates said that he would see that the railroad company paid for his services. The plaintiffs (Drs. D. W. and M. S. Thomas, partners,) looked to the railroad company for their pay, and gave the credit to the railroad company, although upon their books they charged Kennedy for their services, and did not charge the railroad company. About the last of December 1869, Dr. D. W. Thomas made out a bill for his services against the railroad company, and sent this bill by mail inclosed in a letter properly addressed to H. Hale, superintendent of the western division of the defendant's railroad, at Kansas City, Missouri. This letter

stated the employment of Dr. Thomas by Gates, and asked that the bill be paid. Hale never answered.

In July 1871 the plaintiffs commenced this action. Two trials were had — the first in February 1872, and the last in May 1873 — at the first of which trial, as well as the last, Dr. Thomas testified concerning said letter and said bill. In March 1872 the plaintiffs gave notice to the defendant and its attorneys to produce said letter and said bill on the trial, as the plaintiffs wished to use them as evidence. The defendant however did not produce either of them; and although Dr. Thomas testified on both trials concerning their contents, yet the railroad company did not show whether they had ever been received by Mr. Hale, or not. Of course they were received. The mere putting them into the post-office, properly directed and addressed, was *prima facie* evidence of that fact, and there was no evidence to the contrary. The court below instructed the jury that the employment of Dr. Thomas by Gates and Kane would not alone make the railroad company responsible for Dr. Thomas' services; and that unless such employment was afterward ratified by some agent of the company having power to ratify the same, the plaintiffs could not recover. Now the only evidence tending to show a ratification of said employment was the neglect or refusal of Hale, and of the railroad company, after receiving said letter and bill, to pay any attention to them. And upon this evidence the jury evidently found that there was a ratification; and taking this evidence, together with the circumstances of this case, we think the evidence was sufficient to sustain such finding. (*Toledo Rld. Co. v. Rodriques*, 47 Ill. 188; *Toledo Rld. Co. v. Prince*, 50 Ill. 26; *Marquette Rld. Co. v. Taft*, 28 Mich. 289, 294, et seq.; *A. & P. Rld. Co. v. Reisner*, 18 Kas. 458.) Kennedy was in the employ of the railroad company; Gates was the master-mechanic of that division; Kennedy was injured while performing services for the company, under the orders of Gates, and in the immediate presence of Gates; Gates employed Dr. Thomas, and said that he would see that the company paid him; Dr. Thomas performed the ser-

vices, looking to the company for his pay, and while he was
so performing such services, and before he had finally com-
pleted them, sent said letter and said bill to Hale, itemizing
his said services, explaining the same, and informing Hale
of his said employment by Gates, etc.; and although Hale
was at that time the superintendent of that division, yet he
never paid any attention to said letter or to said bill.   We
cannot upon such a state of facts say that the finding of the
jury was erroneous.

But it is claimed by plaintiff in error, defendant below,
that the court below erred in giving the following instruc-
tion to the jury, to-wit:

"It is claimed that Mr. Hale, the party to whom Dr.
Thomas says he addressed the letter at Kansas City, was the
deputy, or division superintendent of the road or company,
or of that part of the road this side of Holden, Missouri.
It is claimed he had such authority by virtue of his position,
as empowered him originally to have employed the plaintiffs;
and that if he had such power, in case the original employ-
ment was by some servant of the company who had not
authority to employ, he had the authority to ratify the un-
authorized act.   I say that the law would presume, in the
absence of testimony to the contrary, that the general super-
intendent of a railroad company would have authority to
employ a surgeon to attend on an employé of the company
who had been injured while in the employ of the company.
That would be the presumption of the law, in absence of
testimony.   Now the division superintendent, Hale, *had, in
respect to matters happening within his jurisdiction, the same
authority as the general superintendent had.*   But I say this
is the presumption of the law, when the testimony does not
show what the precise nature of his authority was.   If the
testimony should show, as a matter of fact, that he did not
have such authority, then I say to you the plaintiffs could
not recover in this case; that is, if the testimony shows that
Mr. Hale, as division or deputy superintendent, had not
authority to have originally employed the plaintiff, then he
had not the power to ratify the act of either Kane or Gates,
or other subordinate servants of the company."

We think the foregoing instruction is correct.   We think
that presumptively "the general superintendent of a railroad
company would have authority to employ a surgeon to at-

tend on an employé of the company who had been injured while in the employ of the company," and presumptively that the division superintendent would have "in respect to matters happening within his jurisdiction the same authority as the general superintendent," although in both cases these presumptions might be rebutted by evidence, and it might be shown that neither the general superintendent nor the division superintendent had any such power or authority. And we would also think that presumptively, and in the absence of anything to the contrary, where an officer or agent of the company has the power in the first instance to employ a physician and surgeon, and make the company responsible for his services, such officer or agent would also have the power to ratify a previous unauthorized employment of such physician and surgeon, and thereby make the company responsible for his services. We also think that there was sufficient evidence for the jury to find that "the division superintendent, Hale, had, in respect to matters happening within his jurisdiction, the same authority as the general superintendent had."

The judgment of the court below will be affirmed.

All the Justices concurring.